The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good morning. The court is calling case number 4-24-1492, People of the State of Illinois v. Ronald Burt. Would counsel for the appellant please state your name for the record. Good morning, your honors. My name is Jeffrey Bruce Kirkham. Thank you. And for the appellee? Good morning. My name is Courtney O'Connor for the state. All right. Thank you both. Mr. Kirkham, you may proceed. May it please the court and counsel. Good morning, your honors. This court should reverse Ronald Burt's convictions for murder and armed robbery because the Sixth Amendment right to be tried by an unbiased and impartial jury was violated. The Illinois Supreme Court has recognized that a trial before a biased jury is structural error that renders a criminal trial fundamentally unfair. Structural error is subject to automatic reversal. The structural error in this case resulted from the trial court and defense counsel's conduct of selection in Mr. Burt's December 2006 retrial on murder charges. There are two particular aspects of the jury selection process used here that made Mr. Burt's trial fundamentally unfair. First is the highly prejudicial nature of the fact that Mr. Burt had pled guilty at an earlier trial on the same charges for which he was being retried. Mr. Burt, we laid out in our written briefs how courts have recognized the inherently prejudicial nature of disclosing to jurors the fact of a prior guilty plea. As the appellate court noted in Haycraft, an ordinary juror could not contemplate that a person would admit guilt to a crime if in fact you were not guilty. And further, once a juror has knowledge of a prior guilty plea in the same case, that juror would be unable to totally erase that disclosure from his or her mind. The cases that you cite for that proposition, do they arise in the context of that information being learned during the course of the trial? No, I do not think so. The fact of a prior guilty plea is so prejudicial that once that knowledge is acquired by potential jurors and later jurors, that it renders them biased, subject to dismissal for cause. Well, I mean, a guilty plea is essentially like a confession, right? I mean, it's a statement of acknowledgement by the defendant that he committed the crime. Correct. So, as noted in the concurrence in Moomin, people versus Yount said that where there is pre-trial knowledge of a defendant's confession, which is inadmissible, as long as during voir dire the court determines that the jurors can put that aside and render a fair verdict, it's not error to seat them. But there is an exception that Moomin discusses. They say in Moomin that questions about the content of publicity which jurors have been exposed might be helpful, but to be constitutionally compelled to inquire as to their knowledge of pre-trial publicity, it has to be more than helpful. The court's failure to ask these must render the defendant's trial fundamentally unfair. And that's the situation we have in this case. My point is, though, that in the cases where it comes up in the middle of trial, the jurors haven't been voir dired on that, right? We didn't have the chance to voir dire them, potentially for the defense to exercise strikes, but it's different when it's pre-trial publicity because they are voir dired about their ability to be fair. Isn't that a significant difference between this case and those cases? What makes this case different, Your Honor, is the magnitude of the prejudice to the defendant when a potential juror knows that the defendant has pled guilty to the same charges for which he is being tried. Most of the cases, the bulk of the cases, involve less severe forms of pre-trial publicity. Our Illinois Supreme Court case, People v. Taylor, is instructive on this where the pre-trial publicity involved the results of polygraph tests. Polygraph tests, just like guilty pleas, are always inadmissible in trial. And in that case, the fact that the jurors learned of it through pre-trial publicity deprived the defendant of a fair trial and his convictions were reversed. So there is precedent. Well, Taylor points out that the issue there is unique. It's unlike other factual details. The concern was about whether the jurors understand it, whether the effect of a polygraph could be subtle and unconscious on the jurors. And so they said, if you know of it, you should have been excused. The U.S. Supreme Court has said, that is not the rule when it comes to confession. Isn't a guilty plea more like a confession than a polygraph? I would submit that it's the equivalent of a polygraph. Once a juror knows that a person has failed a polygraph test, in their mind, it would say, why would he have failed a polygraph test if he wasn't guilty? In this case, we have, why would a person have pled guilty if he wasn't guilty? Why would a person confess if he wasn't guilty? Except Patton says, that's okay. You can seek that person so long as there is assurance that they will be fair. I want to get a little bit away from that in that we don't know.  Well, but we didn't, the conduct of Vordir in this case, we don't know whether they could be fair and impartial if it is shown that they know of the guilty plea. Here, the lack of content questions puts the defendant in a position where we know that they were exposed to this. Well, let's play that out. I mean, I'm sorry. Go ahead. Oh, I'm sorry. I didn't see. Let's play that out. If the jurors were asked, they would tell them either that I knew about it, or I didn't know about it, or maybe somewhere in between. Why don't we just assume the worst? Assume they all knew. If Patton says that's not a basis to keep somebody off the jury, if they can be fair, didn't the judge skip to the material questions by asking about, regardless of what you knew, can you put that aside and be fair in this case? Well, as Taylor points out, the effects of this knowledge of the prior failing of a polygraph test and the functional equivalent of a prior guilty plea, the effect of that knowledge is very subtle, unconscious. We don't doubt the sincerity of jurors when they say they can be fair, but the effect is so prejudicial as has been shown through all of the cases that say that any disclosure of a guilty plea during trial or during voir dire revolts in reversible error. Yeah, we're not saying the jurors aren't sincere when they say they can be fair, but can they really? Taylor answers that question as no, we will not make that leap of logic and find that it's not such a subtle and unconscious prejudicial effect. What about Kircher? Kircher didn't overrule Taylor, it simply distinguished it. The content of the news reports in Kircher didn't rise to the level of the prejudice that's involved when you have knowledge of a prior guilty plea. Kircher followed Moomin, but that doesn't mean that Supreme Court identified in Taylor don't apply equally strongly in this case. Counsel, can you clarify your position? What if the court had gone through all of the questions about the extent of the knowledge of any media reports and then had assurance that each individual juror could be fair and impartial? What's your position there? Could the courts seat them at that point? No, I would just refer the court back to Taylor again, where the Taylor court, our Supreme Court said that once the juror discloses that prior knowledge, then they are subject to removal for cause. So you're familiar with and in opposition to Patton, don't feel that's good law. I feel that Mr. Burt's position is that the highly prejudicial nature of knowledge of a prior guilty plea makes it a unique situation that rises to the level of the same error that occurred with the polygraph tests in Taylor. With regards to, sorry go ahead Justice Kavanaugh. I'm sorry, I'll ask one final question in this context. So counsel, you seem to prefer or feel that Taylor is better precedent than Moomin case? I think that Moomin is good laws followed by Kirchner, but I think those cases are distinguishable from Taylor based on the severity of the prejudicial nature of the information that was learned by jurors during pre-trial publicity and that is the fact of the prior guilty plea. And just one other follow-up, and the reason I ask is because Justice Doherty, I believe asked the question, the Moomin case seems to be closer in terms of the facts. In terms of, you know, you're talking about a polygraph versus a confession of plea of guilty, it seems to be the closer of the two. I'm sorry, I don't, could you ask the question again sir? Yes, so Moomin is a situation where there's pre-trial knowledge of a confession. That seems to be closer to the scenario here than hearing some talk of a polygraph result. I think that as I answered earlier, I think that the fact of a prior guilty plea is very similar to the polygraph. It puts the idea in the minds of potential jurors that why would he have failed a polygraph? Why would he have pled guilty if he weren't guilty? They carry that underlying notion and of the defendant is already guilty into the jury with them. So, if I may, with regards to the Kirchner case that you cite, I guess one question I have here, when we're looking at the amount of publicity, I don't know that we can say there was saturation if we only have one or two articles around the time of the retrial and we don't have the numbers that we had in the other cases. So, I appreciate that setting aside the content, if you will, and I appreciate you've argued the guilty plea and the fact that he was initially sentenced to death row. But I mean, aren't those two cases distinguishable based on that alone? Well, I think that we need to separate and be conscious of the difference between a motion for change of venue because of overwhelming volume of free trial publicity and the narrower issue that we have in this case of the content. Even though there are two primary news stories from the local newspaper, one of them was on the Sunday before jury selection started on Monday. The veneer was dismissed on Tuesday. There was another story that came out the very day that the jury that heard this case was selected that reported that Mr. Bird had pled guilty. Jurors said they had learned about the case from the newspaper. One had read the story from that morning. So, the volume of free trial publicity is not the problem here. The problem here is those two stories that potential jurors in Mr. Bird's case were familiar with that said that he had pled guilty at his first jury trial. When we look at the Taylor case also, I believe they counseled there and I appreciate you've argued ineffective assistance of counsel. When we look at the prejudice prong, if counsel didn't go through all the peremptory challenges in this case, how do they establish prejudice? Counsel's acquiescence in the trial court's approach of not inquiring into the content of their knowledge deprived him of the ability to have adequate information on which to base peremptory challenges and to issue challenges for cause. In addition, we're talking again structural error here where we have biased jurors sitting on the jury. It's a question of fairness. Trial counsel has a duty to protect his client and to ensure the selection of unbiased jury as does the trial court and as McLean states, the state also. Everyone has a duty to ensure selection of an unbiased jury here. Trial counsel going along with the court's desire to see the jury and to not ask those content questions is unreasonable and resulted in a fundamentally unfair trial. Is it unreasonable if they're essentially presuming that if they read the stories, they know the content? What's the purpose and isn't there a downside to bringing out those details in front of the other jurors? Well, the jury in this case was selected in four panels of four but there's nothing that was preventing the court from if a juror said, I have knowledge based on pre-trial publicity and media reports of this to do one-on-one questioning of the prospective jurors and as Taylor points out, once they say, yeah, I know he pled guilty, they're subject to dismissal for cause. You know, how does that not contradict the U.S. Supreme Court? We're talking about rights flowing from the Sixth Amendment and the U.S. Supreme Court in patent said somewhat a juror's knowledge of a confession, even though inadmissible, isn't a per se bar to them serving as a juror. I would submit that again, as I answered earlier, your honor, all I can say is that the fact of a prior guilty plea is the equivalent of the polygraph admission in Taylor. Here's the difference. People, jurors are for the most part people, people might understand how another person could plead guilty. People don't understand how polygraph machines work and could put greater stock in them as though they are some magic answer beyond the consideration of all the other evidence. Isn't that what the Supreme Court's central concern was about that polygraph evidence? Well, and that's the same concern that appellate courts have expressed about knowledge of a prior guilty plea in the cases that I cite. It's so highly prejudicial that it results in reversal. You know, a confession, I think a confession is less conclusive in prospective jurors' minds than a guilty plea. A guilty plea is an admission to all the elements of the offense. Is a confession necessarily an admission to all the elements of an offense? No, it depends on the content of the confession. Those of us with law degrees might see that difference. I don't know that jurors would see that difference. The jurors hear somebody say, I did it, and that is going to have less impact than he pled guilty to the charges. I mean, was Taylor wrongly decided? I would submit that it was not. Well, but the Supreme Court could have gone with Taylor and Kirchner, and it didn't. It seemed to suggest it was limited to its facts in a sense. And Taylor was decided without the benefit of the Supreme Court case law that followed, which said there is no general duty to go ask content questions. Kirchner came out after Moomin and did not make that point. Kirchner did not say Taylor is no longer good law because of Moomin. That's true. Kirchner distinguished Taylor on the facts of the content of the pre-trial publicity. The content of the pre-trial publicity was not good law. The content of the publicity in Kirchner, they said, did not rise to the level of the polygraph test prejudicial effect. So Kirchner had the opportunity to say, we're now all in on Moomin, and Taylor is no longer good law. They left Taylor standing on the distinction of the nature of the prejudicial pre-trial knowledge. The information in Kirchner was an article containing information concerning a defendant coming to another person's house with blood on his clothing and with a bloody knife with a broken tip. But not a guilty plea to all elements of the offense. All right. We put you over your time. Do you have any final statement before we end? Yes, your honor. I would merely ask that this court reverse Mr. I know that this is a second stage post-conviction proceeding. The normal remedy would be to remand for a third stage evidentiary hearing. But I would submit as I outlined in my brief that there is sufficient basis in the record for this court to reverse outright Mr. Burt's convictions. We would ask that the court do that and remand this case for new trial. Thank you. Thank you, Mr. Kirkham. Ms. O'Connor. Good morning. May it please the court, counsel. The state would ask this court to find that the trial court's watered-air inquiry here was sufficient and the defendant was not denied his right to an impartial jury. As previously addressed in the state's motion to dismiss, sorry, in the state's brief defense reliance on the cases that have previously been discussed here were unpersuasive as the information exposed to the jury in those cases were exposed during trial and not during pre-trial, during Wadier where extensive inquiry into a juror's knowledge of the guilty plea could be asked by the trial court to figure out what exactly the juror knows, where the information came from, if that juror could put aside the information it knows and still remain impartial. Although the defendant argues that it does not matter when a juror finds out this information, it does make a difference, especially here that the potential jurors who were aware of the defendant's guilty plea found out about this information prior to Wadier, where the point of Wadier is to remove those jurors who cannot put away their biases and prejudice so much they cannot apply to the law as instructed in accordance with the oath that they will take. That's exactly what the trial court did here. Following the initial Wadier where a potential juror exposed the entire veneer to this information regarding the defendant's guilty plea, the trial court at the request of the defense counsel excused the entirety of that veneer in order to avoid bias on that jury due to this exposed information. The trial court took those steps to excuse that entire veneer and then come back the next day and start over. This is a case where it's clear based on the record that all the parties, including the trial court, were aware of the pre-trial publicity within the two articles that are at issue here. With that such knowledge, they use that to sufficiently inquire into each potential juror's knowledge of that guilty plea during the second Wadier. It's important to note that because when a juror finds out this information during trial, at that point it's too late. They've been exposed. They've already been sat for the trial. Whereas here, by admonishing the jurors, the trial court here did admonish that there was pre-trial publicity here and specifically told the jurors that they could not put aside their bias or prejudice based on this information to let the court know during Wadier. When asked during Wadier about if they knew anything information about the case and where they knew this information from and if the parties and the courts believed that such jurors who knew information could not put aside their biases, opinions, or prejudice, they were properly excused in this case. It's important to note that of the 12 jurors that were seated for this case, only five of them were aware of the articles in this case or of the defendant's guilty plea. We really don't know if they were aware of the guilty plea other than assuming that if they were aware of the article that they were aware of the guilty plea. That's correct. So, in going to the two articles in this case, the first one was published in May of the year of the trial. Essentially, it did state that the defendant pled guilty in the information about the previous trial. The second article was actually addressed by the defense counsel during the motion to change venue, which also was dated the day of the first Wadier, which again addressed that the defendant had previously pleaded guilty. However, when the jurors were asked about if they had any knowledge of the case, the trial court was not required to ask if they specifically knew the defendant had pled guilty due to these articles. Even with that, the jurors also said that they only really knew general information about the case if they knew anything. And then after that, the trial court asked, based on this, are you able to remain impartial, which is the main question in this case. There can be an impartial jury where the defendant receives a clear trial. That is the main question. It's not how much publicity they were exposed to. It all comes down to if they can remain impartial even based on their exposure to this publicity. And the jurors who were sat said they could put that aside. If the trial court had taken individual jurors and asked them, what do you know? And they said, well, I know he had pled guilty. Would that prevent that juror from serving if the juror said I can put that aside and be fair? The state would argue, no, it would not prevent your best authority for that. It'd be the Kirchner case as addressed in our brief, as well as the Newman case as addressed in our brief, which basically states that even with, although neither case specifically goes to guilty pleas, they do each state that with awareness of information of the prior proceedings, that even if the juror states that it knows of the property, whether it's the confession or just the details of proceedings, that does not mean that juror must be removed from the jury. Counsel, if I may, if, if just for hypothetical purposes, we accept the premise that the appellant provides, which is simply that, you know, the juror having knowledge of the guilty plea alone is prejudice at that point. Presumed you agree with counsel that at that point, there's really no evaluation of the prejudice prong when considering the ineffective claim that it's presumed, or do you believe that there's something to be argued there? I would argue that there's, it would not be presumed. And again, that goes back to my argument, saying that it cannot be presumed because of the extensive question that could happen during raw deer to inquire as to how much their knowledge of a guilty plea goes into their biases and prejudice. When a juror states that he or she can be impartial, he or she should be believed. Does that answer your question, Your Honor? Well, I guess to follow up, and maybe it's close to that, but what would your argument be then with regards to the prejudice prong? If, and I understand you're still arguing that the court was satisfied the first, that there was no ineffectiveness under the first prong, under a second prong that counsel would have to prove of prejudice. Are you suggesting that that, if we found for the appellant on the first issue, the second issue is presumed as to prejudice, or are you arguing something along the lines I asked earlier, which was in this case, counsel didn't even use all their preemptories? So, I think the state would argue here is that the prejudice still cannot be shown in this case because the defendant cannot establish that the outcome would have been different had defense counsel had more extensive inquiry into the jurors here. This is a case with strong evidence against the defendant, and by failing to show that there was a clear bias or prejudice on a juror with their knowledge of the prior case cannot establish that the verdict would have been different if the defense counsel would have had a more extensive inquiry into this case. I also think that it could be harmful having a more extensive inquiry, and even if you individually question a juror saying, well, you specifically know this person pled guilty, and they say, no, I just skimmed an article, that's all I know, that's offering more information to a juror that that juror had not previously known. And I think that's one reason why the trial court did not ask for the details of what the jurors knew is because it's not only could be potentially harmful offering that information, but also could put the juror in a position where they feel like they're on trial and being asked questions extensively about something they said they only really know general information about, and that they could put aside their biases and prejudice even based on this information and still be impartial and make a decision based on the evidence here. And the appellate counsel noted that lie detector test results, if you will, as well as guilty pleas are never admissible. Do you agree with that statement? Yes, I do. However, distinguishing the Taylor case here, this is not, the case is a very unique case because the lay person or juror is less likely to put aside something that they potentially believe is scientific evidence of a defendant's guilt. And the state would argue that a guilty plea compared to a, oh my gosh, sorry, lost my thing, a polygraph test. They're completely different things. A lay person, a juror, a veneer person, the state would argue not, those are not equivalent here. We would argue that it's a quasi science that most general people would believe was true if it says that a defendant said he committed this crime and it says true or says inconclusive. Most lay people may not know what those two answers mean. Whereas a guilty plea is a guilty plea in their minds. And they could say, okay, we pled guilty here, but they can say, I can put that by side and look at the evidence that's presented to me and then make my decision based on that evidence, even though I might have very general information about an article that says he pled guilty years prior to the case. Does that answer your question, your honor? Yes. Thank you. Okay. Is there any other questions? Okay. So based on the state's brief, as well as relying on any remaining arguments in that case, the state would ultimately argue here that the defendant failed to show any substantial, make a substantial showing of a constitution violation in order to warrant an evidentiary hearing in this case. I think the record here establishes that the trial court's voir dire was sufficient. I think that the case law in Illinois, specifically Kirchner, and then the Mumin case as well, has established a procedure where if this publicity happens, that the trial court, which is what they did here, brought down the panel to four jurors and asked them general questions, which is what our case law says they can do. And based on that, and based on the jurors' answers, as well as their demeanor, asked them if they could still remain impartial, even though they had this previous information. So ultimately the state would ask that, in relying on our arguments here, as well as on the written brief, that this court would affirm the court's granting of the state's motion to dismiss, and in doing so, affirm the defendant's convictions and sentence. For any remaining arguments not covered, the state would rely on its brief. Thank you. Thank you, counsel. Mr. Kirkham, your butthole. Thank you, Your Honor. It's interesting that the post-conviction court, in its written order dismissing the claim here, noted that defendant cannot point to any juror who is biased against him. And you know, that's the state's position also regarding the prejudice prong of Strickland. But you have to acknowledge the catch-22 position that the defendant is in here. When the trial court says we will not ask content questions about jurors' knowledge learned from pretrial publicity, you've taken away a source of information from which you can show that bias. Well, can I get clarification there? That's what the trial court did in its questioning? Did the trial court ever say counsel could not inquire into content? I can't make that representation to the court. I mean, I assume because you're bringing a claim of ineffective assistance, you would have to have him have that latitude. Well, I think that the trial counsel had a responsibility to his client and a duty to client to challenge the trial court on that point. Whether it was just an unspoken dynamic of voir dire that we're not going to ask about this or whether there was a direct order, do not ask about this. Counsel had an obligation to push back. You have to protect your client's interests in seating an unbiased jury. And to do that, you have to say, I need to know whether they know that he pled guilty or not here. Doesn't this case turn on whether knowledge of a guilty plea pretrial by a juror who says they would be fair still requires excusing that juror or does it not? That question is really what the case turns on because if it doesn't automatically require it, I'm not sure what purpose is served by the content inquiry. Right. And I know we've talked a lot about the prejudicial nature of polygraph versus guilty plea, but Taylor answers that question is, yes, as soon as the potential juror says I have this highly prejudicial knowledge in our case, learn from a guilty plea, that juror is subject to dismissal for cause. So I think the answer to that based on Taylor is yes, our Supreme Court. Is that what Taylor says? Or does Taylor say there should be a further inquiry? I have a quote in my brief. I'm pretty confident that says that the Taylor it's a potential for removal for cause. Yet the court has then an obligation to inquire further to see if a juror can still remain fair and partial. Right. And once they say they knew about the polygraph, at that point, they are subject to dismissal for cause. Okay. Thank you. Thank you. But Taylor was decided two months before the Supreme Court issued patent in which it said knowledge of a defendant's otherwise inadmissible guilty plea. I'm sorry, not guilty plea confession. Doesn't prohibit that juror from serving if they are determined that they can be fair. So would Taylor be decided the same way with that knowledge? I would submit the yes, it would be. I think that the Supreme Court recognized the incredibly prejudicial nature of knowledge of polygraph tests. And I think that guilty pleas are equally as prejudicial. I think that once you plant that notion. How about confessions? I think confessions are less likely to be interpreted as admission of every element of the offense, whereas a guilty plea means, yes, I did it. I admit I did it. I admit all the evidence or excuse me, I admit to that there's sufficient evidence on all elements of the offense. You don't have that in a confession. Confessions is a broad term that means a statement to police doesn't necessarily prove. It's, you know, the state is required to do more than just submit a confession to prove guilt. I think that the analogy between polygraph tests and guilty pleas is so close that Taylor should control in this case. All right. We thank counsel for the arguments. We will take the matter under advisement and issue a decision in due course and we will stand temporarily recessed.